**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIERSTIN GILBERT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. _____ |
| | : | |
| | : | |
| MILTON HERSHEY SCHOOL | : | |
| 801 Spartan Lane | : | *Electronically Filed* |
| Hershey, PA  17033 | : | |
| | : | |
| Defendant. | : | JURY TRIAL DEMANDED |
| | : | |

**COMPLAINT FOR
DECLARATORY, EQUITABLE, AND MONETARY RELIEF**

Plaintiff, Kierstin Gilbert, (hereinafter "Ms. Gilbert") claims damages upon a cause of action against the above-captioned Defendant, Milton Hershey School, whereof the following is a statement:

**JURISDICTION**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as a case arising under the laws of the United States. Jurisdiction is invoked pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* whichs provide for original jurisdiction of Ms. Gilbert's claims arising under the laws of the United States and over actions to recover

damages and to secure equitable and other relief under the appropriate governing statutes.

2. Ms. Gilbert filed a charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission docketed as 530-2015-00105, received her Right to Sue letter on or after June 1, 2016, and has exhausted all administrative remedies and taken all other steps necessary to bring this action before this Court.

## **VENUE**

3. Paragraphs 1 through 2 are incorporated herein by reference as though set forth in full.

4. The actions complained of herein occurred within the jurisdiction of this Court and involve the Defendant Milton Hershey School who resides within its jurisdictional limits.

5. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and 1391(c) because one or more defendants can be found in the Middle District of Pennsylvania and events or omissions giving rise to Plaintiff's claims have occurred in the Middle District of Pennsylvania, specifically in Dauphin County, Pennsylvania.

## PARTIES

6.   Paragraphs 1 through 5 are incorporated herein by reference as though set forth in full.

7.   Plaintiff, Kierstin Gilbert, (hereinafter "Ms. Gilbert") is employed with the Milton Hershey School (hereinafter "Defendant Milton Hershey School" or "Defendant") as a part-time Hair Stylist in the Spartan Styles Shop located on the Milton Hershey School campus.   Ms. Gilbert is a member of a protected class (race – Black) and engaged in protected activity during her employment with the Defendant Milton Hershey School.

8.   Defendant Milton Hershey School (hereinafter "Defendant Milton Hershey"), is a non-profit corporation authorized to do business in Pennsylvania, with a principal place of business at 801 Spartan Lane, Hershey, PA  17033.  Defendant Milton Hershey employees in excess of 15 employees, and is engaged in commerce throughout the United States and Pennsylvania. Thus, Defendant Milton Hershey and is an "employer" pursuant to Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.

## FACTUAL ALLEGATIONS

9. Paragraphs 1 through 8 are incorporated herein by reference as though set forth in full.

10. Plaintiff, Kierstin Gilbert, is a member of a protected class (race – Black).

11. The Defendant Milton Hershey School operates a hair salon called the Spartan Styles Shop, which is located on the Milton Hershey School Campus in the Copenhaver Center.

12. The Spartan Styles Shop serves students after school and on the weekends.

13. The primary purpose of the Spartan Styles Shop is to maintain healthy hair while also building self-esteem and confidence.

14. The standard hours of operation are Monday through Friday, 2:30 p.m. through 8:00 p.m., and one Saturday a month from 8:00 a.m. to 1:30 p.m. to accommodate the needs of the students.

15. Fifty percent or more of the female students at the Milton Hershey School are black.

16. It is well known that black females often require additional services than Caucasian females, as well as special hair care products.

17. Ms. Gilbert was hired as a part-time Hair Stylist by the Defendant, Milton Hershey School, on or about April 4, 2012.

4

18. Ms. Gilbert, who is a licensed cosmetologist in Pennsylvania, had the requisite knowledge and skill to perform the part-time Hair Stylist position, which requires a vocational or other technical school, certification, training or apprenticeship beyond high school.

19. In her position, Ms. Gilbert earned $19.40 per hour, plus benefits.

20. She worked approximately 20 hours per week.

21. According to Ms. Gilbert's position description, the position of the part-time Hair Stylist is to "maintain proper hair grooming of students."

22. That position description also explains that the Spartan Styles Shop:

> …cuts/trims, cleans, styles, and performs chemical services on student's hair.  Enhancing and maintain healthy hair for students by providing instruction in grooming and hygiene is a function of this position. …

23. In her position, Ms. Gilbert reported directly to the Lead Hair Stylist, Tiffany Renninger.

24. Tiffany Renninger's race is Caucasian.

25. In addition to supervising Ms. Gilbert (race, Black), Ms. Renniger also supervised the other part-time Hair Stylists in the Spartan Styles Shop.

26. During her employment, Ms. Gilbert performed satisfactorily in her position and received satisfactory or better performance evaluations.

27. The Milton Hershey School and the Spartan Styles Shop maintain and distribute a handbook with policies that regulate the hair styles permitted

for Milton Hershey school students, along with their hair care requirements and products they may use.

28. According to the Hair Care General Guidelines after January 1, 2012:

It is the responsibility of the house parents to ensure that students visit the Milton Hershey School (MHS) Spartan Styles Beauty Shop Hair Care Providers a minimum of every 3 weeks unless otherwise recommended by MHS Hair Care Providers; hair care appointments will be made at the recommendation of the Hair Care Providers; students are expected to keep their hair neat and clean at all times; and students not capable of maintaining their own hair should have hair that is low maintenance.

29. Tiffany Renninger (race – Caucasian) told Ms. Gilbert that middle and high school students should be self-sufficient in their hair care.

30. This means that they should be able to take care of their own hair, without the assistance of the stylists, such as Ms. Gilbert, who are employed with the Milton Hershey School.

31. In her position as a stylist, Ms. Gilbert observed many black female students that required additional hair care services, which the Milton Hershey School failed to provide.

32. She also observed that the Milton Hershey School was not providing black female students with the proper hair care products on the School's formulary.

33. As a result of being denied proper hair care services and hair care products, many black females in the upper and middle school divisions of the Milton Hershey School suffered hair breakage and loss.

34. Ms. Gilbert brought the concerns of the female black students to the attention of her supervisor, Tiffany Renninger, and asked her to whom she should address her concerns.

35. Ms. Renninger replied, "Whoever is concerned."

36. She failed to provide the proper services and products for the black female students.

37. Ms. Renninger regularly refused to provide hair care services to black male and female students and typically preferred to only provide hair care services, such as scissor cuts, for white students.

38. In January of 2012, Ms. Gilbert was permitted to set up a training for female students in caring for their hair.

39. In preparation in December 2012, Tiffany Renninger sent an email to Milton Hershey house parents informing them of the training to help "girls that have hard to manage hair" to train them in shampooing, blow

drying, straightening, wrapping, braiding, and maintaining their hair styles.

40.   In May of 2013, there was a meeting in the Milton Hershey HLA Department about boys "fades" and box cuts.

41.   Fade and box cuts are typically performed on black males.

42.   Tiffany Renninger attended the meeting and upon her return to the Spartan Styles Shop was asked how the meeting went.

43.   Ms. Renninger said, with a really big smile, that it went "really good" and that boys are no longer allowed to get fades or box cuts because they take too long.

44.   Fade or box cuts typically take 20-25 minutes, which is the same time it takes for a scissor cut.

45.   Scissor cuts are typically performed on Caucasian hair.

46.   As a result, haircutting services were taken away from black children at the Milton Hershey School and these children were denied equal treatment and services because of their race.

47.   After that decision, a mandatory training was held for Spartan Styles Staff to become successful with boys' scissor cuts.

48. Prior to the training, Ms. Gilbert and other black staff discussed the damage being done to middle division and senior division black female students.

49. Instead of providing the services needed for the black students, Ms. Renninger decided to reorganize the Spartan Styles Shop schedule to allow more time for boys' scissor cuts.

50. During a June 24, 2013 meeting, Ms. Gilbert again asked Ms. Renninger to get the black female students assistance with their hair care.

51. Ms. Renninger responded, "Hair is not a priority here at MHS. You know that don't you Kierstin."

52. On or about September 12, 2013, a houseparent approached Ms. Gilbert and was very concerned about black students' hair, particularly the breakage and damage, and that it was not a good representation for the Milton Hershey School.

53. On September 14, 2013, a black female student complained to Ms. Gilbert that her houseparent took all of their combs away as a punishment and that they have no products to take care of their hair.

54. On September 17, 2013, another black female child cried and broke down to Ms. Gilbert, saying that her hair was "ugly" because her hair was "short and poofy."

55. Ms. Gilbert tried to explain to the child that she was beautiful and showed her pictures of black female celebrities with short hair like hers.

56. On September 18, 2013, a black female, middle division student presented with her hair completely broken off in the back because she had not been provided with access to the hair styling services with the Milton Hershey School for two years, since she was in the elementary division.

57. The Milton Hershey School house parents (the majority of whom as white) are generally untrained in caring for the hair of black children.

58. Instead of providing proper care and products, they instruct black children to "put a brush through your head" or to wear ponytails.

59. Such instruction causes black children's hair to break and results in long-term damage.

60. Breakage occurs when hair is not properly care for; hair can literally snap off due to split ends, over-processing of chemicals, heat damage, and improper styling.

61. However, the Milton Hershey School also maintains a policy that forbids children from having shaved heads or other types of styles that would allow black children's hair to grow back while still being fashionable.

62. After nearly a year and a half of advocating for equal treatment for black students, in September 2013, Ms. Gilbert put her concerns in writing to Mr. Elliott Robinson, Vice President of Administration at the Milton Hershey School.

63. On her own time, Ms. Gilbert completed a report that she entitled "Spartan Styles Shop Review."

64. The Report indicates that of the 945 total females at the Milton Hershey School, approximately 60 female students were serviced weekly by the Spartan Styles Shop.

65. Ms. Gilbert found that over 100 middle division black females at the Milton Hershey School were experiencing severe breakage and unhealthy hair.

66. Ms. Gilbert's report demonstrates that Milton Hershey students are experiencing the damaging effects of breakage because of (1) lack of proper care and (2) lack of a system for trims, maintenance of relaxers and deep conditions.

67. After complaining about race discrimination and asserting the rights of black students at the Milton Hershey School, Defendant Milton Hershey School took adverse actions against Ms. Gilbert.

68. On December 10, 2013, Defendant denied Ms. Gilbert the opportunity to be promoted to be the Designated Manager, who is the person in charge when the Supervisor, Tiffany Renninger, was absent from work.

69. Instead, a white female, Danielle Linebaugh, was promoted through appointment by Tiffany Renninger, the only other white stylist employed in the Spartan Styles Shop.

70. Ms. Gilbert was qualified for the Designated Manager position as she had satisfactory Achievement Plans.

71. Additionally, Ms. Gilbert had six more months of experience working for the Defendant Milton Hershey School.

72. The denial of the promotion was due to Ms. Gilbert's protected class (race – Black) and protected activity.

73. On January 30, 2014, Ms. Gilbert brought her complaints to the Milton Hershey School Department of Human Resources.

74. She specifically complained of "discriminatory actions in services being provided to the students" at the Milton Hershey School.

75. Examples of the discriminatory actions included the disparate time being allotted for students with healthy hair to receive services "while this large percentage of African American students to do receive the necessary and required services" to maintain proper hair grooming.

76. At that time, Ms. Gilbert suggested ethnic hair care training and revision of policies.

77. Soon after Ms. Gilbert's complaint, on February 28, 2014, Tiffany Renninger provided special services to white students.

78. She provided shampoo training to two, white female students and excluded two, black female students in the residence from the shampoo training.

79. The two black female students were on the hair breakage list, meaning they need additional services and training to maintain healthy hair.

80. Instead of providing equal services for black students, on or about March 6, 2014, Defendant gave Ms. Gilbert a performance evaluation with negative comments throughout for the evaluation cycle of August 1, 2013 through July 31, 2014.

81. The comments provided to Ms. Gilbert are suggestive of retaliation for complaining of discriminatory policies.

82. Additionally, on March 11, 2014, Ms. Renninger sent an email directing that "Under no circumstances are any female students to have a shaved head, and we will not provide shapes ups to females for any reason."

83. Such a direction denied services to black female students because shapeups are necessary to maintain healthy hair.

84. On March 13, 2014, Ms. Gilbert requested a follow-up meeting regarding her performance review.

85. Ms. Gilbert was not provided with a follow-up meeting by her supervisor, Tiffany Renninger.

86. In the Spring of 2014, other black employees of the Spartan Styles Shop presented complaints similar to Ms. Gilbert's.

87. Despite these complaints, no changes were made to Milton Hershey's policies or procedures, including providing black students with ethnically appropriate hair care products and services.

88. Instead, Tiffany Renninger distributed pictures to Milton Hershey School house parents indicating what types of hairstyles were unacceptable for female students.

89. All of the pictures of "unacceptable" hairstyles were of black female celebrities with short hairstyles.

90. After the meeting with the Human Resources Department, Ms. Renninger continued to give preferential treatment to white students; for instance, on March 26, 2014, she refused to provide services to black female students and provided services to white students instead.

91. Defendant's adverse actions against Ms. Gilbert were done with reckless indifference to Ms. Gilbert's rights under federal and state law and have

caused her to experience humiliation, depression, anxiety, sleeplessness, and loss of enjoyment of life.

92. Ms. Gilbert is therefore entitled to damages, including compensatory damages, damages for lost pay and benefits, damages for future lost pay and benefits, punitive damages, and reimbursement of attorneys' fees and costs.

## COUNT I

### *Race Discrimination in Violation of*
### *Title VII of the Civil Rights Act,*
### *42 U.S.C. §2000e et seq.*

93. Paragraphs 1 through 92 are incorporated herein by reference as though set forth in full.

94. Defendant violated Title VII of the Civil Rights Act by discriminating against Ms. Gilbert because of her race (Black).

95. Ms. Gilbert was qualified to perform her position as part-time Stylist with the Milton Hershey School Spartan Styles Shop.

96. Ms. Gilbert was subject to disparate treatment because of her race, including being denied a promotion because of her race.

97. Other individuals employed as part-time stylists with the Milton Hershey School who were outside of Ms. Gilbert's protected classes (Race and

retaliation) were given more favorable treatment as more fully outlined herein.

98. For instance, Danielle Linebaugh, who was promoted to the Designated Manager position, was the only other white cosmetologist except for Tiffany Renninger in the Spartan Styles Shop.

99. Ms. Linebaugh was employed with the Spartan Styles Shop the shortest amount of time of all the cosmetologists.

100. As such, she was the least qualified for the Designated Manager position, but because of her race (Caucasian), she was promoted to the exclusion of Ms. Gilbert.

101. Therefore, Defendant violated Title VII of the Civil Rights Act.

102. Defendant engaged in the discriminatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Ms. Gilbert's statutory civil rights protected by federal and state law.

103. As a direct and proximate result of Defendant's actions and omissions, Ms. Gilbert has suffered and will continue to suffer loss of employment, lost wages, mental anguish, anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

104. The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Ms. Gilbert's well being, thereby entitling her to punitive damages.

## COUNT II

### *Race Discrimination in Violation of the Pennsylvania Human Relations Act, 43 Pa.C.S.A. §951 et seq.*

105. Paragraphs 1 through 104 are incorporated herein by reference as though set forth in full.

106. Defendant violated Title VII of the Civil Rights Act by discriminating against Ms. Gilbert because of her race (Black).

107. Ms. Gilbert was qualified to perform her position as part-time Stylist with the Milton Hershey School Spartan Styles Shop.

108. Ms. Gilbert was subject to disparate treatment because of her race, including being denied a promotion, because of her race.

109. Other individuals employed as part-time stylists with the Milton Hershey School who were outside of Ms. Gilbert's protected classes (Race and retaliation) were given more favorable treatment as more fully outlined herein.

110. For instance, Danielle Linebaugh, who was promoted to the Designated Manager position, was the only other white cosmetologist except for Tiffany Renninger in the Spartan Styles Shop.

17

111. Ms. Linebaugh was employed with the Spartan Styles Shop the shortest amount of time of all the cosmetologists.

112. As such, she was the least qualified for the Designated Manager position, but because of her race (Caucasian), she was promoted to the exclusion of Ms. Gilbert.

113. Therefore, Defendant violated the Pennsylvania Human Relations Act.

114. Defendant engaged in the discriminatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Ms. Gilbert's statutory civil rights protected by federal and state law.

115. As a direct and proximate result of Defendant's actions and omissions, Ms. Gilbert has suffered and will continue to suffer loss of employment, lost wages, mental anguish, anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

116. The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Ms. Gilbert's well being, thereby entitling her to punitive damages.

## COUNT III

### *Retaliation in Violation of Title VII of the Civil Rights Act,*
### *42 U.S.C. §2000e et seq.*

117. Paragraphs 1 through 116 are incorporated herein by reference as though set forth in full.

118. During her employment with the Defendant Milton Hershey School, Ms. Gilbert asserted her rights under federal and state law to work with Defendant in a non-discriminatory, non-retaliatory environment and asserting the rights of black students to have equal access to services.

119. When Ms. Gilbert asserted her rights under federal and state law, Defendant had actual notice of her basis for a discrimination complaint.

120. After complaining to Defendant, Ms. Gilbert suffered illegal retaliation by Defendant and its employees, as more fully outlined above, which was materially adverse to a reasonable employee.

121. Ms. Gilbert repeatedly warned Defendant that she was being subjected to discrimination in the form of unfair and disparate practices and being subjected to a hostile work environment by Defendant because of her race (Black).

122. Defendant failed or refused to investigate, alleviate, or eliminate the discrimination being practiced against Ms. Gilbert despite her complaints thereof.

123. The acts and omissions described herein were because of Ms. Gilbert engaging in protected activity and/or being a member of a protected class (black).

124. Additionally, the retaliation negatively affected the terms, conditions, and privileges of Ms. Gilbert's employment with Defendant.

125. Defendant's actions against Ms. Gilbert, as more fully outlined above, were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

126. Defendant violated Title VII of the Civil Rights Act in retaliating against Ms. Gilbert for asserting her rights under federal and state law.

127. As a result of Defendant' willful violations of Title VII, Ms. Gilbert has suffered damages, including loss of reputation, loss of future income and growth opportunities, damage to her career, and loss of happiness and well-being.

128. By participating in and/or causing the negatively-changed working conditions and the above-described adverse workplace actions Defendant have violated Title VII of the Civil Rights Act, 42 U.S.C. 2000e, *et seq.*

129. Defendant' violations of Title VII of the Civil Rights Act were wanton, willful and malicious.

130. Defendant engaged in the retaliatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference Ms. Gilbert's statutory civil rights protected by federal law.

131. Thus, Defendant willfully violated Title VII of the Civil Rights Act when it retaliated against Ms. Gilbert and is liable to Ms. Gilbert for economic, compensatory, and punitive damages, along with attorneys' fees and costs.

## COUNT IV

### Retaliation in Violation of the Pennsylvania Human Relations Act, 43 Pa.C.S.A. §951 et seq.

132. Paragraphs 1 through 131 are incorporated herein by reference as though set forth in full.

133. During her employment with the Defendant Milton Hershey School, Ms. Gilbert asserted her rights under federal and state law to work with Defendant in a non-discriminatory, non-retaliatory environment and asserting the rights of black students to have equal access to services.

134. When Ms. Gilbert asserted her rights under federal and state law, Defendant had actual notice of her basis for a discrimination complaint.

135. After complaining to Defendant, Ms. Gilbert suffered illegal retaliation by Defendant and its employees, as more fully outlined above, which was materially adverse to a reasonable employee.

136. Ms. Gilbert repeatedly warned Defendant that she was being subjected to discrimination in the form of unfair and disparate practices and being subjected to a hostile work environment by Defendant because of her race (Black).

137. Defendant failed or refused to investigate, alleviate, or eliminate the discrimination being practiced against Ms. Gilbert despite her complaints thereof.

138. The acts and omissions described herein were because of Ms. Gilbert engaging in protected activity and/or being a member of a protected class (black).

139. Additionally, the retaliation negatively affected the terms, conditions, and privileges of Ms. Gilbert's employment with Defendant.

140. Defendant's actions against Ms. Gilbert, as more fully outlined above, were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

141. Defendant violated the Pennsylvania Human Relations Act Act in retaliating against Ms. Gilbert for asserting her rights under federal and state law.

142. As a result of Defendant' willful violations of the PHRA, Ms. Gilbert has suffered damages, including loss of reputation, loss of future income and

growth opportunities, damage to her career, and loss of happiness and well-being.

143. By participating in and/or causing the negatively-changed working conditions and the above-described adverse workplace actions Defendant have violated the Pennsylvania Human Relations Act.

144. Defendant' violations of the Pennsylvania Human Relations Act were wanton, willful and malicious.

145. Defendant engaged in the retaliatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference Ms. Gilbert's statutory civil rights protected by federal law.

146. Thus, Defendant willfully violated the Pennsylvania Human Relations Act when it retaliated against Ms. Gilbert and is liable to Ms. Gilbert for economic, compensatory, and punitive damages, along with attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Kierstin Gilbert, respectfully requests that this Agency enter judgment in her favor and against the Defendant Milton Hershey School and direct the following relief:

1. For a judgment declaring Defendant violated Title VII of the Civil Rights Act and its state counterparts;

2. For a money judgment representing damages, including lost wages, future lost wages and front pay, punitive damages, and all other sums of money, including retirement benefits and other employment benefits, together with interest thereon for the Defendant's willful violations of Title VII of the Civil Rights Act;

3. For a money judgment representing prejudgment interest;

4. For an Order directing Defendant to restore Ms. Gilbert to her position and make her whole;

5. That the Court retain jurisdiction over this action until the Defendant have fully complied with the Orders of this Court and that the Court require Defendant to file such reports as may be necessary to supervise such compliance;

6. Order Defendant to provide equal services to black and minority students;

7. For the costs of suit, including an award of reasonable attorneys' fees;

8. Fine Defendant for its violations of Title VII of the Civil Rights Act;

9. For such other and further relief as may be just and proper, including all relief afforded to victims of discrimination and retaliation under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.

## JURY TRIAL DEMANDED.

24

RESPECTFULLY SUBMITTED

KIERSTIN GILBERT

BY AND THROUGH HER ATTORNEYS

/s/ Lisa Matukaitis, Esq.

_____

Lisa Matukaitis, Esq.
PA Bar ID: #202467
Matukaitis Law LLC
104 STATE STREET
HARRISBURG, PA  17101
Ph. 717.412.7759
Fax 717.412.7764
lm@matlawllc.com
www.matlawllc.com

Dated:  August 29, 2016