IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIERSTIN GILBERT,** | : | CIVIL ACTION NO. 1:16-CV-1798 |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **MILTON HERSHEY SCHOOL,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Kierstin Gilbert ("Gilbert") commenced this action against her employer asserting claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. §§ 951-963. (See Doc. 12). Defendant Milton Hershey School ("Milton Hershey") moves to dismiss Gilbert's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 14). For the reasons that follow, the court will grant the motion in part and deny the motion in part.

**I.    Factual Background & Procedural History**

Milton Hershey operates a hair salon to accommodate the needs of its students. (Doc. 12 ¶¶ 13-14). The salon is located on Milton Hershey's campus and is called the Spartan Styles Shop ("Spartan Styles" or "the salon"). (Id.) Gilbert was hired by Milton Hershey to work at the salon as a part-time hair stylist on or about April 4, 2012. (Id. ¶¶ 11-12). As a part-time stylist, Gilbert is permitted to work four days per week, for a maximum of twenty hours. (Id. ¶ 15). Gilbert is African American and her direct supervisor, Tiffany Renninger ("Renninger"), is

Caucasian. (Id. ¶¶ 10, 18-19). Six other part-time stylists work at the salon and are supervised by Renninger—five are African American and one is Caucasian. (Id. ¶¶ 19-20, 40).

Gilbert asserts that African American female students were "denied proper hair care services and hair care products" at Spartan Styles at the direction of Milton Hershey. (See id. ¶¶ 28-30). Gilbert further avers that this discrimination toward the students limited Gilbert's ability to perform her job and her access to materials. (Id.) Gilbert first discussed her concerns about the "disparate treatment" of African American female students with Renninger and Tiffany Guimond (Renninger's boss), but her concerns were ignored. (Id. ¶¶ 31-32, 36). In September 2013, Gilbert complained in writing about the issue to Elliott Robinson, Vice President of Administration at Milton Hershey. (Id. ¶¶ 36, 50).

Gilbert avers that Milton Hershey took "adverse actions" against her after she complained about the inadequacy of services provided to African American female students at the salon. (Id. ¶¶ 39, 47). Specifically, Gilbert alleges that she was denied a promotion to "Designated Manager." (Id. ¶¶ 41, 47). Gilbert avers that she was fully qualified for the position, but Renninger promoted Danielle Linebaugh ("Linebaugh"), the only Caucasian part-time stylist. (Id. ¶¶ 45-46, 85-86). As "Designated Manager," Linebaugh worked additional hours, received additional training, and had more duties at the salon. (Id. ¶¶ 42-44, 52-53). Gilbert argues that Linebaugh was the "least qualified" for this position but was promoted because she is Caucasian. (Id. ¶¶ 87-88).

Gilbert and the other African American stylists met with Renninger on January 8, 2014, to discuss Linebaugh's promotion. (Id. ¶ 55). On January 30, 2014, Gilbert complained to Milton Hershey's human resources department about Linebaugh's promotion. (Id. ¶ 48). Approximately five weeks later, Gilbert received a performance evaluation with negative comments. (Id. ¶ 59). According to the *allegata*, Gilbert's evaluation included negative comments because she complained about "discriminatory policies." (Id. ¶ 60). In contrast, Gilbert's prior performance evaluation in August 2013 contained only positive comments. (Id. ¶ 61).

Gilbert filed charges with the United States Equal Employment Opportunity Commission ("EEOC") on August 6, 2014. (Docs. 14-2, 17-6). She dual-filed her charges with the Pennsylvania Human Relations Commission ("PHRC"). (Doc. 14-2). The EEOC sent Gilbert a right-to-sue letter on May 23, 2016, (Doc. 14-1), which Gilbert received on June 1, 2016, (Doc. 12 ¶ 2). On August 29, 2016, Gilbert commenced the instant action. (Doc. 1). She subsequently filed an amended complaint alleging race discrimination and retaliation under Title VII and the PHRA. (Doc. 12). Milton Hershey moves to dismiss the amended complaint in its

entirety under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 14).  The motion is fully briefed and ripe for disposition.[1]

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must

---

[1] Milton Hershey alternatively seeks summary judgment pursuant to Federal Rule of Civil Procedure 56.  The court declines to exercise its discretion to convert Milton Hershey's motion to dismiss into a motion for summary judgment.  See Kulwicki v. Dawson, 969 F.2d 1454, 1463 at n.11 (3d Cir. 1992).

Also pending before the court is Gilbert's motion to strike.  (Doc. 16).  As a threshold matter, we note that Gilbert never filed a brief supporting her motion. Local Rule 7.5 provides that the court must deem a party's motion withdrawn if the party fails to support its motion with briefing.  LOCAL RULE OF COURT 7.5.  We further note that all of the arguments made in Gilbert's motion to strike are moot per the court's decisions under Rule 12 herein.

plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint. FED. R. CIV. P. 8(c). Nevertheless, the court may dismiss a complaint as time-barred under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002); see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). This deficiency must be apparent on the face of the pleading. See Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-

5

civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 252-53, but leave is broadly encouraged "when justice so requires," FED. R. CIV. P. 15(a)(2).

### III.   Discussion

Milton Hershey asserts two principal arguments in support of its motion to dismiss: first that Gilbert's amended complaint is time-barred, and second that Gilbert's allegations, even accepted as true, fail to establish an entitlement to relief under Title VII and the PHRA.

#### A.   Timeliness

Milton Hershey argues that Gilbert's amended complaint should be dismissed in its entirety because Gilbert failed to file her original complaint within the period mandated by Title VII. See 42 U.S.C. § 2000e-5(f)(1). The enforcement scheme established under Title VII contemplates a two-tier review process. Before applying to federal courts for relief, potential claimants must submit their claims to the appropriate state and federal agencies, in this case, the PHRC and the EEOC. See id. § 2000e-5(c), (d). Following termination of the agencies' review, which is often indicated by issuance of a right-to-sue letter, the claimant may file an action in federal district court. See id. § 2000e-16(c).

Should the claimant choose to file an action in federal court, she must do so within 90 days of receipt of her right-to-sue letter from the EEOC. See id. § 2000e-5(f)(1). The 90-day period commences after either the claimant or her attorney receives the right-to-sue letter, whichever happens first. See Mosel v. Hills Dept. Store, Inc., 789 F.2d 251, 252 & n.1; Khazzaka v. Univ. of Scranton, No. 3:01-CV-211,

2001 WL 1262320, at *2 (M.D. Pa. Oct. 22, 2001) (citing Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 92 (1990)). Courts have construed this 90-day requirement as a statute of limitations, rather than a jurisdictional prerequisite. Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239-40 (3d Cir. 1999). As such, the defendant must prove each element of the statute of limitations defense, "including the date that the limitations period commenced." Baker v. Gichner Shelter Sys., No. 1:12-CV-2014, 2013 WL 3863941, at *4 (M.D. Pa. July 23, 2013) (quoting Vazquez v. Caesar's Paradise Stream Resort, 524 F. App'x 831, 834 (3d Cir. 2013) (nonprecedential)).

In the matter *sub judice*, Milton Hershey has not met its burden. Milton Hershey avers simply that the EEOC issued Gilbert's right-to-sue letter on May 23, 2016, and that the limitations period began to run three days later making Gilbert's original complaint five days late. (See Docs. 14-1, 15 at 7-8). Absent evidence to the contrary, the court will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it. See Seitzinger, 165 F.3d at 239 (citing Fed. R. Civ. P. Rule 6(e), now Rule 6(d)). This presumption, however, is rebuttable by minimal evidence. Vazquez, 524 F. App'x at 833-34. Gilbert contends that she did not receive the right-to-sue letter until June 1, 2016, making her complaint timely. (See Doc. 12 ¶ 2). The court must accept as true the receipt date alleged by Gilbert. See Khazzaka, 2001 WL 1262320, at *2; Baker, 2013 WL 3863941, at *5. The court will deny Milton Hershey's motion to dismiss Gilbert's amended complaint on timeliness grounds without prejudice to Milton Hershey's right to reassert the defense as appropriate following discovery.

### B.     Gilbert's Discrimination and Retaliation Claims

Milton Hershey argues that Gilbert's discrimination and retaliation claims should be dismissed because Gilbert did not suffer an adverse employment action—a necessary element to establish a *prima facie* case for both claims. The court will first address Gilbert's discrimination claims.

#### 1.     *Discrimination Under Title VII and PHRA*[2]

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To establish a *prima facie* case of discrimination, a plaintiff must prove: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances of the adverse action give rise to an inference of discrimination. Kimes v. Univ. of Scranton, 126 F. Supp. 3d 477, 494 (M.D. Pa. 2015) (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999)).

Milton Hershey does not dispute that Gilbert is a member of a protected class because of her race and that she was qualified for her position as a part-time stylist

---

[2] The United States Court of Appeals for the Third Circuit has held that such dual claims are properly analyzed under the same legal standard because "Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002); see also Syed v. YWCA of Hanover, 906 F. Supp. 2d 345, 354 (M.D. Pa. 2012). Hence, the discussion of Gilbert's race discrimination claims applies coextensively to Count I (Title VII) and Count II (PHRA) of the amended complaint.

at Spartan Style.  (See Doc. 14 at 9-12; Doc. 12 ¶¶ 10-11).  The issue is whether Gilbert suffered adverse employment action, to wit: the denial of promotion to "Designated Manager," the receipt of negative comments in her performance evaluation, or the denial of materials to perform her job duties.  If she did suffer an adverse employment action, then the court must examine whether the circumstances surrounding the adverse action give rise to an inference of discrimination.  We will examine each alleged adverse action separately.[3]

### a. Denial of Promotion to "Designated Manager"

The law is well settled that denial of a promotion constitutes an adverse employment action under Title VII.  See, e.g., Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); Barnes v. Nationwide Mut. Ins. Co., 598 F. App'x 86, 90 (3d Cir. 2015) (nonprecedential).  Gilbert avers that the "Designated Manager" position was associated with an opportunity for increased duties, hours, and training.  (See Doc. 12 ¶¶ 41-44).  Gilbert further contends that she was denied the promotion after she spoke out against unequal services being provided to African American female students, and that the part-time stylist promoted to the "Designated Manager" position was the only non-African American stylist at the salon and had the least amount of experience.  (See id. ¶¶ 39, 42, 46, 88).

The court finds, based on the allegations set forth above, that Gilbert adequately alleges an adverse employment action in the form of denial of promotion

---

[3] Milton Hershey also moves to dismiss the amended complaint on the ground that Gilbert attempts to allege disparate impact in her working conditions in a manner that is beyond the scope of her EEOC complaint.  (See Doc. 15 at 18-19).  The court's review of the amended complaint reveals no such attempt.  Thus, Milton Hershey's disparate impact concerns are moot.

and facts to support an inference of discrimination. Gilbert has satisfied her burden of establishing a *prima facie* case of discrimination, shifting the burden to Milton Hershey to articulate one or more legitimate, nondiscriminatory rationales for its decision. Milton Hershey, however, does not present a single nondiscriminatory rationale as to why it promoted Linebaugh over the other stylists, including Gilbert. It argues only that the "Designated Manager" position did not constitute a promotion, an argument not suited for resolution at the pleading stage.[4] We will deny Milton Hershey's motion to dismiss Gilbert's race discrimination claim based on denial of this promotion.

### b. Negative Comments in Performance Evaluation

Criticism of an employee's work performance does not constitute an adverse employment action unless it effects "a material change in the terms or conditions" of an individual's employment. See Mieczkowski v. York City Sch. Dist., 414 F. App'x 441, 447 (3d Cir. 2011) (nonprecedential). Even if the court assumes that the comments in Gilbert's March 6, 2014 performance evaluation are indeed "negative," Gilbert does not allege any changes in the terms or conditions of her employment after the evaluation—let alone any material changes. (See Doc. 12 ¶¶ 59-60). She asserts only that her request for a follow-up meeting regarding her evaluation was

---

[4] Milton Hershey argues that the "Designated Manager" position does not exist, thus precluding Gilbert from claiming that she suffered an adverse employment action. (See Doc. 15 at 10). Milton Hershey's sole support for this argument is Renninger's Affidavit, (Doc. 7), which the court declines to consider at this procedural juncture. See In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133-34 (3d Cir. 2016); Frederick Hart & Co. v. Recordgraph Corp., 169 F.2d 580, 581 (3d Cir. 1948); Piazza v. Lakkis, No. 3:11-CV-2130, 2012 WL 2007112, at *4 n.2 (M.D. Pa. June 5, 2012).

10

denied. (See id. ¶ 66). These assertions are plainly insufficient to establish a *prima facie* case of discrimination. The court will grant Milton Hershey's motion to dismiss Gilbert's race discrimination claim premised on comments in her performance evaluation.

### c. Denial of Materials to Perform Job Duties

The court need not determine whether denial of materials to perform job duties constitutes an adverse employment action because we find that Gilbert has not alleged facts giving rise to an inference of discrimination. Gilbert avers cursorily that she was denied "the materials to perform her job duties" on account of her race. (Doc. 12 ¶¶ 84, 95). But she does not describe what those materials were, or why they are necessary to perform the job duties of a part-time stylist. Gilbert contends only that African American female students were denied certain services and products, and that this impacted Gilbert's ability to provide services and products to those students. (See id. ¶¶ 28-30). Gilbert also suggests that all of the other part-time stylists were denied these materials. (See id. ¶ 33). Gilbert's conclusory *allegata* do not satisfy Rule 12 scrutiny. The court will grant Milton Hershey's motion to dismiss Gilbert's race discrimination claim reliant on the denial of materials.

### 2. *Retaliation Under Title VII*

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must allege: (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action. See Carvalho-Grevious v.

11

Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017) (citing Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006)).  An employee engages in protected activity when she opposes an employment practice prohibited by Title VII.  See 42 U.S.C. § 2000e-3(a); see also Moore, 461 F.3d at 341.  Opposition of practices other than those prohibited under Title VII does not constitute protected activity.  See Lamb-Bowman v. Del. State Univ., 39 F. App'x 748, 750-51 (3d Cir. 2002) (nonprecedential); Hatcher v. Conifer Realty LLC, No. 1:04-CV-1872, 2007 WL 3237518, at *4 (M.D. Pa. Oct. 30, 2007) (Conner, J.).  To establish an adverse employment action in the retaliation context, Gilbert must show that the act would dissuade a reasonable employee "from making or supporting a charge of discrimination."  Daniels v. School Dist. of Phila., 776 F.3d 181 (3d Cir. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006)).

Gilbert identifies two events in support of her Title VII retaliation claim: the denial of promotion and negative comments in a performance evaluation.  (See Doc. 12 ¶¶ 41, 59-60).  Gilbert's opposition activities, prior to the denial of promotion, related to the alleged discrimination aimed at African American female students.  (See Doc. 12 ¶¶ 28-31, 36, 39, 50).  This does not qualify as protected activity under Title VII because Gilbert's opposition was not in response to unlawful employment practices by Milton Hershey.  The negative comments occurred after Gilbert complained to human resources of Linebaugh's promotion (an arguably protected activity), (see id. ¶ 48), but they do not amount to an adverse employment action.  As explained *supra*, Gilbert does not aver that anything changed after her evaluation.

The court will grant Milton Hershey's motion to dismiss Gilbert's Title VII retaliation claim.

### 3. *Retaliation Under PHRA*

Courts analyze PHRA retaliation claims under the same framework as Title VII retaliation claims. See Daniels, 776 F.3d at 192-93; Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). But unlike Title VII retaliation claims, PHRA retaliation claims do not require a plaintiff to oppose an *employment practice* to qualify as protected activity. See 43 PA. STAT. AND CONS. STAT. ANN. §§ 955(d). The PHRA contemplates a broader array of protected activity than Title VII, including: opposition to a labor organization denying full and equal membership rights on account of race, 43 PA. STAT. AND CONS. STAT. ANN. § 955(c); opposition to a person attempting to evict an occupant of any housing accommodation before termination of a lease because of pregnancy or the birth of a child, id. § 955(h)(1)(1.1); and opposition to an owner of any public accommodation denying privileges of such public accommodation on account of race, id. § 955(i)(1).

Gilbert asserts that the same two employment actions described *supra* sustain her claim for unlawful retaliation under the PHRA. She again fails to articulate a *prima facie* case. Although Gilbert's opposition to the alleged discrimination aimed at African American female students could potentially qualify as protected activity under the PHRA's public accommodation provision, see 43 PA. STAT. AND CONS. STAT. ANN. § 955(i)(1), Gilbert fails to aver sufficient facts from which the court could conclude that Milton Hershey, a private school, would qualify

as a "public accommodation" as defined by the Act, see id. § 954(l).[5]  Gilbert asserts no other facts to suggest that her opposition activity prior to the denial of promotion embodied a protected activity under the PHRA, and as already explained above, the negative comments did not effect an adverse employment action.  The court will grant Milton Hershey's motion to dismiss Gilbert's PHRA retaliation claim.[6]

### C. Leave to Amend

Gilbert's Title VII retaliation claim against Milton Hershey, to the extent it is premised on opposition to discrimination against students, is legally incurable and will be dismissed with prejudice.  The court harbors moderate doubt concerning Gilbert's ability to cure the remaining deficiencies identified in this memorandum, particularly given that this matter presents on an amended complaint.  Nonetheless, the Third Circuit Court of Appeals requires courts to grant leave to amend in civil rights cases when a curative amendment is conceivable.  See Fletcher-Harlee Corp., 482 F.3d at 251; Grayson, 293 F.3d at 108.  To the extent

---

[5] We assume *arguendo* that Gilbert intends to invoke the public accommodation provision of the PHRA by averring that she suffered "illegal retaliation" for "asserting the rights of black students to have equal access to services." (See Doc. 12 ¶¶ 125, 127).  We note that if Gilbert elects to file a second amended complaint and base her retaliation claim on the PHRA public accommodation provision, she will be presenting a novel cause of action that has not yet been addressed by either the Third Circuit or the Pennsylvania courts.  See Kopko v. Lehigh Valley Health Network, No. 14-1290, 2014 WL 5365023, at *4 & n.4 (E.D. Pa. Oct. 22, 2014).

[6] Milton Hershey also moves to dismiss Gilbert's retaliation claims on the ground that Gilbert makes "new allegations regarding retaliation" that are outside of the scope of her EEOC charge and therefore do not relate back to her original complaint.  See Doc. 15 at 19-21.  As explained above, Gilbert has failed to allege a *prima facie* claim for retaliation under either Title VII or the PHRA.  Hence, Milton Hershey's argument regarding scope of the EEOC retaliation charge is moot.

Gilbert's claims are factually rather than legally flawed, the court will grant Gilbert a final opportunity to amend her pleading with respect to the claims dismissed herein, as more fully articulated in the forthcoming order.

### IV.     Conclusion

The court will grant in part and deny in part Milton Hershey's motion (Doc. 14) to dismiss.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     August 30, 2017