# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIERSTIN GILBERT,** | : | CIVIL ACTION NO. 1:16-CV-1798 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **MILTON HERSHEY SCHOOL,** | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Kiersten Gilbert ("Gilbert") filed this employment discrimination lawsuit against her employer, defendant Milton Hershey School (the "School"). Gilbert alleges disparate treatment due to her race in violation of state and federal law. The School moves (Doc. 28) for summary judgment.

## I. Factual Background and Procedural History[1]

Gilbert, who is African American, began working for the School's Spartan Styles Shop (the "salon") as a part-time "hairstylist/beautician" in April 2012. (Doc. 29 ¶ 1; Doc. 36 ¶ 7). Gilbert was hired to work 20 hours per week providing "basic

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 29, 36). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the Rule 56.1 statements.

hair care service for students" at the School. (Doc. 29 ¶¶ 2, 5). At all relevant times, Tiffany Renninger ("Renninger") was Gilbert's immediate supervisor. (Id. ¶ 7; Doc. 36 ¶ 7). Renninger, who is white, is the salon's lead stylist and only full-time employee. (Doc. 29 ¶¶ 7, 8; Doc. 36 ¶ 7).

At the time in question, the salon was open Monday through Friday and one Saturday a month. (Doc. 29 ¶ 9; Doc. 30, Tab A, Gilbert Dep. 19:22-10:5 ("Gilbert Dep.")). Gilbert testified that she was available to work any day the salon was open but had requested not to work Fridays due to a consistently low number of appointments. (Doc. 29 ¶ 10; Doc. 36 ¶¶ 9-10; Gilbert Dep. 22:12-23, 77:19-78:3). Gilbert avers that she had come to work on Fridays only to be sent home early or to be tasked with "making crayons" instead of providing hairstyling services. (Doc. 36 ¶ 10; Gilbert Dep. 21:17-21, 77:19-78:3).

In October 2012, the School hired Danielle Linebaugh ("Linebaugh"), who is white, as a part-time "hairstylist/beautician" at the salon. (Doc. 29 ¶ 12; Doc. 36 ¶¶ 12, 15). During Linebaugh's employment, she was paid the same hourly rate as Gilbert. (Doc. 29 ¶ 13). Linebaugh was the only licensed cosmetologist in the salon scheduled to work Monday through Friday and occasionally on Saturdays. (Id. ¶ 14). Around December 2013, Renninger asked Linebaugh to be the "point person" or "designee" to speak to the Pennsylvania State Board of Cosmetology should an inspector visit the salon. (Id. ¶¶ 16, 20). In her deposition, Gilbert described this appointment as Linebaugh being made "designated manager" of the salon. (Gilbert Dep. 31:18-32:9). The parties agree that this designation was not an official "promotion" and that Linebaugh received no salary increase and continued

2

to be employed as a part-time "hairstylist/beautician." (Doc. 29 ¶¶ 17-18; Doc. 36 ¶¶ 17-18). In a subsequent meeting with the School's Human Resources Department, administrators clarified that Renninger was the actual "designee" for any state inspection. (Doc. 29 ¶¶ 23-24).

Gilbert alleges that the School, through its agent Renninger, treated Linebaugh—the only white part-time stylist—more favorably than similarly situated African-American employees. Gilbert also avers that the School retaliated against her after she raised certain race-related issues to administrators. Gilbert commenced this action in August 2016 after exhausting her administrative remedies, and four months later filed an amended complaint. Her amended complaint asserts race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. §§ 951-63. Following Rule 12 motion practice, the court dismissed Gilbert's retaliation claims but allowed the Title VII and PHRA racial discrimination claims—based on the alleged denial of a promotion—to proceed. Gilbert v. Milton Hershey Sch., No. 1:16-CV-1798, 2017 WL 3727447, at *4-7 (M.D. Pa. Aug. 30, 2017). Gilbert was granted leave to amend but chose to proceed only on the promotion-related Title VII and PHRA discrimination claims. The School now moves for summary judgment. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a

jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forward with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

## III.  Discussion

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).[2]  To establish a *prima facie* case of racial discrimination, a plaintiff must prove: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances

---

[2] In general, claims of employment discrimination under Title VII and the PHRA are analyzed coextensively.  See Jones v. SEPTA, 796 F.3d 323, 327 (3d Cir. 2015) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002)).

4

of the adverse action give rise to an inference of discrimination. *In re* Tribune Media Co., 902 F.3d 384, 401-02 (3d Cir. 2018). If a plaintiff can demonstrate a *prima facie* case of discrimination, the burden then shifts to the defendant to offer a "legitimate, non-discriminatory reason" for the adverse employment action. Id. (citation omitted); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). After the defendant has come forth with such evidence, the burden "rebounds" to the plaintiff to show that the proffered reason is pretext. *In re* Tribune Media Co., 902 F.3d at 402 (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).[3]

The School argues that summary judgment must be granted in its favor because Gilbert has not established an adverse employment action for her *prima facie* race discrimination claims. The School further contends that even if Gilbert were able to adduce evidence of an adverse action, her claims still fail because she has not rebutted the School's proffered legitimate non-discriminatory reason with any admissible evidence. We agree on both accounts.

---

[3] A plaintiff asserting race-based employment discrimination can also proceed under a "mixed-motive" theory, *viz.*, the adverse employment decision was based on "both legitimate and illegitimate reasons" and thus the plaintiff's protected status was at least a "motivating factor" in the adverse decision. Connelly v. Lane Constr. Corp., 809 F.3d 780, 787-88 (3d Cir. 2016) (citing Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)); see also 42 U.S.C. § 2000e-2(m). Gilbert does not address whether she is asserting a pretext or mixed-motive theory of recovery for her discrimination claims. Because Gilbert's claims fail under either theory, we need not resolve this issue.

5

### A. Adverse Employment Action

For status-based employment discrimination claims under Section 2000e-2(a)(1), an "adverse employment action" by an employer is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Jones, 796 F.3d at 327 (quoting Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004)). Examples of actionable adverse decisions include denial of a raise or promotion; failure to rehire; discharge; demotion; suspension without pay; and transfer with detrimental collateral consequences. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (discussing "tangible employment action" affecting employment terms or conditions in hostile work environment context); Connelly, 809 F.3d at 791; Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411-12 (3d Cir. 1999) (citations omitted).

Gilbert asserts a litany of "disparate treatment" allegations against the School, including denial of a promotion, denial of training, denial of hours, and difficulty performing her job duties. (Doc. 35 at 8-11). The problem with Gilbert's argument is twofold. First, the only racial discrimination claims that survived Rule 12 motion practice are the parallel Title VII and PHRA claims grounded in the alleged denial of a promotion. See Gilbert, 2017 WL 3727447, at *4-5. Second, Gilbert has not adduced evidence to demonstrate that the School denied her a promotion or promoted a similarly situated employee outside of Gilbert's protected class instead of Gilbert. To support her failure-to-promote claim, Gilbert relies exclusively on allegations raised in her amended complaint or in her complaint to the Equal Employment Opportunity Commission. (See Doc. 35 at 8-11). This tactic

6

of relying on allegations at summary judgment is explicitly prohibited. See Pappas, 331 F. Supp. 2d at 315; Celotex Corp., 477 U.S. at 322-23; FED. R. CIV. P. 56(e).

Moreover, Gilbert *admits* that Linebaugh was "never promoted to any position and did not receive any salary increase" in December 2013 when Renninger asked Linebaugh to be the point person or designee for state inspection purposes. (Doc. 29 ¶ 17 (internal quotation marks omitted); Doc. 36 ¶ 17). Gilbert maintains there was a "designated manager" position that was eliminated after Linebaugh turned it down but cites to no evidence to support this assertion. The School, *per contra*, has submitted an affidavit from Renninger explicitly averring that "[t]here is not now, nor has there ever been a position of 'Designated Manager' in the [salon]." (Doc. 7 ¶ 13). "An employer's failure to promote a plaintiff to a non-existent position is not enough to support a presumption of intentional racial discrimination." Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1137 (10th Cir. 2004); see also Young v. Temple Univ. Hosp., 359 F. App'x 304, 310 (3d Cir. 2009) (nonprecedential). Because Gilbert has proffered no evidence to support her failure-to-promote allegations, she has not established an adverse employment action for her *prima facie* discrimination claim.

### B. Rebuttal to the School's Legitimate Non-Discriminatory Reason

Assuming *arguendo* that Gilbert could prove an adverse employment action, she has not adduced evidence to rebut the School's legitimate, non-discriminatory reason for selecting Linebaugh as "point person" or "designee." The School has plainly explained that Linebaugh was chosen because, at the relevant time, "she was the only licensed cosmetologist that was scheduled to work Monday through

Friday, and occasional Saturdays in the [salon]." (Doc. 7 ¶ 11). Gilbert admits the underlying facts of this explanation, *i.e.*, that Linebaugh was the only licensed cosmetologist consistently scheduled all days the salon was open, (see Doc. 29 ¶ 14; Doc. 36 ¶ 14), but disputes that this was the reason Linebaugh was selected. Gilbert, however, submits no evidence tending to establish "that the [School]'s proffered justification is merely pretext for discrimination," which is fatal to her claims at summary judgment. See Burton v. Teleflex Inc., 707 F.3d 417, 426-27 (3d Cir. 2013) (citation omitted).

A plaintiff can show pretext by pointing to direct or circumstantial evidence from which a reasonable factfinder could either (1) disbelieve the employer's proffered justification or (2) "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 427 (quoting Fuentes, 32 F.3d at 764). Under the first prong, a plaintiff can discredit an employer's explanation by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered legitimate reason. Id. Under the second prong, a plaintiff may satisfy her burden by offering sufficiently probative evidence that the employer previously discriminated against the plaintiff or others within the plaintiff's protected class or within another protected class, or treated similarly situated persons outside the plaintiff's protected class more favorably. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998) (citing Fuentes, 32 F.3d at 765).

Gilbert exclusively relies on Simpson to attempt to show pretext. She claims that the School held meetings in which it acknowledged allegations of race-based

8

favoritism and that the School was aware of other racial discrimination litigation. Gilbert also asserts that "[s]everal black employees of the [salon] complained of disparate treatment because of their race," (Doc. 35 at 12), but points to nothing in the record to support this accusation. Gilbert's single citation to an email from the School directing her to preserve documents regarding another employee's "pending or reasonably anticipated [employment discrimination] proceedings," (see Doc. 18-4 at 3), is woefully inadequate to meet her summary judgment burden of showing pretext. Such evidence is not sufficiently probative of previous discrimination against Gilbert or other members of her protected class, or more favorable treatment of similarly situated employees outside of Gilbert's protected class. At best, the email implies that there was an *allegation* by another employee of discrimination by the School. Without proffering any probative evidence of pretext, Gilbert's racial discrimination claims fail at the third step in the McDonnell Douglas burden-shifting framework. See *In re* Tribune Media Co., 902 F.3d at 402-03.

## IV. Conclusion

Gilbert's race-based employment discrimination claims under Title VII and the PHRA cannot withstand Rule 56 scrutiny. Gilbert has failed to establish a *prima facie* case of race-based employment discrimination and has likewise failed to demonstrate pretext. We will therefore grant the School's motion (Doc. 28) for summary judgment in its entirety. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: January 11, 2019